UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ATAIN INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. |
| THE TOWER RESIDENCES CONDOMINIUM ASSOCIATION, and MUSEUM POINTE CONDOMINIUM ASSOCIATION, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff ATAIN INSURANCE COMPANY ("Atain"), in support of its Complaint for Declaratory Judgment against Defendants THE TOWER RESIDENCES CONDOMINIUM ASSOCIATION (the "Association") and MUSEUM POINTE CONDOMINIUM ASSOCIATION ("Museum Pointe"), alleges as follows:

**INTRODUCTION**

1. Atain seeks a declaration in this action that no coverage is afforded to the Association under certain insurance policies issued by Atain to the Association with respect to a lawsuit filed by Museum Pointe against the Association in the Circuit Court of Cook County, Illinois, Chancery Division under Case No. 2014-CH-04061 (the "Lawsuit").

2. Atain issued to the Association an insurance policy bearing Certificate Number CIPM0000113 for a Coverage Period from May 10, 2013 to May 10, 2014 (the "2013-2014 Policy"). A true and correct copy of the 2013-2014 Policy is attached hereto and incorporated herein by reference as **Exhibit 1**.

3. Atain issued to the Association an insurance policy bearing Certificate Number CIPM0000139 for a Coverage Period from May 10, 2014 to May 10, 2015 (the "2014-2015 Policy"). A true and correct copy of the 2014-2015 Policy is attached hereto and incorporated herein by reference as **Exhibit 2**.

4. Atain issued to the Association an insurance policy bearing Certificate Number CIPM0000183 for a Coverage Period from May 10, 2015 to May 10, 2016 (the "2015-2016 Policy"). A true and correct copy of the 2015-2016 Policy is attached hereto and incorporated herein by reference as **Exhibit 3**.

5. The 2013-2014 Policy, the 2014-2015 Policy, and the 2015-2016 Policy are collectively referred to herein as the "Policies."

6. The Association sought insurance coverage under the 2013-2014 Policy for the Lawsuit, and Atain has denied coverage for the Lawsuit.

7. The Association received a defense paid for in the Lawsuit by another insurer, but is presently not being defended in the Lawsuit by such other insurer.

8. Therefore, a controversy exists between the parties to this action regarding insurance coverage for the Lawsuit under the Policies, and an entry of a declaratory judgment is required to resolve the controversy.

## THE PARTIES

9. Defendant the Association is incorporated under the laws of Illinois with its principal place of business in Chicago, Illinois, and is therefore a citizen of Illinois.

10. Defendant Museum Pointe is incorporated under the laws of Illinois with its principal place of business in Chicago, Illinois, and is therefore a citizen of Illinois.

11. Plaintiff Atain is a Michigan corporation with its principal place of business in Farmington Hills, Michigan.

## JURISDICTION AND VENUE

12. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is appropriate under 28 U.S.C. § 1391 because the Defendants the Association and Museum Pointe reside in this District.

## THE LAWSUIT

14. Museum Pointe initiated the Lawsuit by filing a Complaint against the Association on March 7, 2014. A true and correct copy of the Complaint filed in the Lawsuit (the "Underlying Complaint"), with exhibits, is attached hereto and incorporated herein by reference as **Exhibit 4.**

15. The Underlying Complaint alleges that Museum Pointe and the Association are condominium associations that administer buildings across the street from one another, and the respective buildings are separated by a private driveway ("East 13th Street").

16. The Underlying Complaint alleges that Museum Pointe and the Association are parties to an easement agreement titled "Grant of Public Access Easement" dated October 29, 2002 ("Easement Agreement"), which among other things, permits the Association's owners, residents, guests, and related service and delivery vehicles to traverse over and onto East 13th Street; requires Museum Pointe to maintain East 13th Street; and prohibits non-delivery vehicles in excess of 6,000 pounds from using East 13th Street. *See* Exhibit 4, at Exhibit A.

17. The Underlying Complaint alleges that permitting vehicles over 6,000 pounds to constantly use East 13th Street accelerates the wear and tear of the street, affects the structural integrity of the street, and interferes with Museum Pointe's use and enjoyment of the parking structure underneath.

18. The Underlying Complaint alleges that the Association knowingly and intentionally violated the vehicular weight restrictions of the Easement Agreement by permitting its scavenger trucks weighing in excess of 35,000 pounds to regularly traverse over East 13th Street twice daily, six days a week and refusing to relocate its trash receptacles along South Prairie Avenue, causing East 13th Street to sustain damages in need of repairs.

19. The Underlying Complaint alleges that Museum Pointe has sent numerous cease-and-desist demands to the Association.

20. On September 14, 2015, summary judgment was entered in the Lawsuit in favor of Museum Pointe, ruling that the Easement Agreement applies to the Association's garbage and refuse vehicles, and that such vehicles are prohibited from East 13th Street. *See* Exhibit 4, at Exhibit B.

21. In the Lawsuit, the Association admitted that it had intentionally utilized overweight refuse vehicles on 13th Street since at least 2006. A true and correct copy of the Association's Verified Answer to Plaintiff's Verified Complaint for Declaratory Judgment is attached hereto and incorporated herein by reference as **Exhibit 5**; *see also* Exhibit 4, at Exhibit B.

22. On October 11, 2017, the Association was granted leave to pursue leave for an award of money damages pursuant to 735 ILCS 5/2-701(c) in the Lawsuit. A true and correct copy of the October 11, 2017 Order is attached hereto and incorporated herein by reference as **Exhibit 6**.

### COUNT I – NO COVERAGE IS AFFORDED UNDER COVERAGE A

23. ATAIN incorporates and restates each and every allegation set forth in paragraphs 1-22 of this Complaint as if alleged in this paragraph 23.

24. The Policies contain a CGL Coverage Form bearing form no. CG 00 01 12 07, which includes the following Coverage A Insuring Agreement:

4

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

           (1)      The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

           (2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

      b.      This insurance applies to "bodily injury" and "property damage" only if:

           (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

           (2)      The "bodily injury" or "property damage" occurs during the policy period; and

           (3)      Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of

such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period, and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time any insured listed under paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Report all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

25. The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26. As referenced in the Underlying Complaint and set forth in the Lawsuit pleadings, the Association admits that it intentionally allowed overweight vehicles to traverse over East 13th Street.

27. A ruling by the Court in the Lawsuit found that the Association's conduct violated the Easement Agreement by utilizing overweight vehicles on it.

6

28. Museum Pointe seeks monetary damages in the Lawsuit based on costs for the repair work on East 13th Street allegedly necessitated by the Association's breach of the Easement Agreement.

29. The Association's intentional use of overweight vehicles on East 13th Street, and its alleged refusal to cease permitting its garbage trucks from traversing East 13th Street and to relocate its trash receptacles, is not an "occurrence" under the Policies.

30. Therefore, no coverage is afforded under the Policies because the Lawsuit does not allege "property damage" caused by an "occurrence."

31. The 2013-2014 Policy incepted on May 10, 2013.

32. The 2014-2015 Policy incepted on May 10, 2014.

33. The 2015-2016 Policy incepted on May 10, 2015.

34. The Underlying Complaint alleges that Museum Pointe made numerous demands to the Association to cease using East 13th Street for its garbage collection and that the Association contended that the vehicular weight restriction in the Easement Agreement did not apply.

35. The Association filed a Verified Answer in the Lawsuit, in which it pleads an affirmative defense and admits that the Association's "scavenger service has operated garbage trucks on and over East 13th Street since the building was completed in 2006…". Exhibit 5; *see also* Exhibit 4, at Exhibit B.

36. The Association was made aware of alleged damage to East 13th Street prior to May 10, 2013.

37. The Association was made aware of alleged damage to East 13th Street prior to May 10, 2014.

38. The Association was made aware of alleged damage to East 13th Street prior to May 10, 2015.

7

39. Coverage under the Policies is precluded for the Lawsuit because the Lawsuit does not allege "property damage" that occurred during the respective policy periods and/or the Association was aware of the damage to East 13th Street prior to the inception of each of the Policies.

40. The Policies include in the CGL Coverage Form the following Exclusions, among others:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> \* \* \*
>
> **g. Aircraft, Auto Or Watercraft**
>
> > "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.
>
> \* \* \*
>
> **j. Damage to Property**
>
> > "Property damage" to:
> >
> > (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
> >
> > \* \* \*
> >
> > (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are

> performing operations, if the "property damage" arises out of those operations.

\* \* \*

41. The Association anticipated that deterioration of and resulting repairs on East 13th Street would result from the Association's use of overweight vehicles on East 13th Street.

42. Therefore, coverage is precluded under Exclusion a. of the Policies.

43. The Underlying Complaint alleges that East 13th Street is in need of repairs because the Association allowed oversized vehicles to traverse over East 13th Street.

44. Therefore, Exclusions g. and j. quoted above apply to preclude coverage for the Lawsuit.

45. The Policies also contain a Coverage B coverage part, which has no application to the Lawsuit and does not afford any coverage for the Lawsuit.

WHEREFORE, Atain respectfully requests that this Court enter judgment in its favor and against the Association and Museum Pointe, declaring and finding that Atain has no duty to defend or indemnify the Association against the Lawsuit under the Policies.

### COUNT II – NO COVERAGE IS AFFORDED UNDER THE NON-OWNED AUTO LIABILITY INSURANCE COVERAGE PROVISIONS

46. ATAIN incorporates and restates each and every allegation set forth in paragraphs 1-45 of this Complaint as if alleged in this paragraph 45.

47. The Policies contain a Hired Auto and Non-Owned Auto Liability Insurance Coverage Endorsement ("Hired Auto and Non-Owned Auto Endorsement"), AF 001 089, which modifies the CGL coverage and provides as follows:

> This endorsement is subject to all the provisions of the Commercial General Liability Coverage Part, except as otherwise provided in this endorsement.\* \* \*

48. For the same reasons stated in Count I of this Complaint, coverage is also

unavailable under the Hired Auto and Non-Owned Auto Endorsement.

49. The Hired Auto and Non-Owned Auto Endorsement provides that the insurance afforded under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** applies to "property damage" arising out of the use of a "non-owned auto" by any person "in the course of your business."

50. Under the Policies, a "non-owned auto" means:

> …any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business.

51. The Association is not in the business of waste management.

52. No coverage is available under the Hired Auto and Non-Owned Auto Endorsement because the overweight vehicles at issue were not used in the course of the Association's business.

53. The Hired Auto and Non-Owned Auto Endorsement also provides that the insurance afforded under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** applies to "property damage" arising out of the maintenance or use of a "hired auto" by the Association and its "employees" in the course of the Association's business.

54. No coverage is available under the Hired Auto and Non-Owned Auto Endorsement because the overweight vehicles at issue were not used by the Association and its "employees", and were also not used in the course of the Association's business, as the Association is not in the business of waste management.

WHEREFORE, Atain respectfully requests that this Court enter judgment in its favor and against the Association and Museum Pointe, declaring and finding that Atain has no duty to defend or indemnify the Association against the Lawsuit under the Policies.

Dated: March 22, 2018                        Respectfully submitted,

                                                   **ATAIN INSURANCE COMPANY**

By:     s/ David T. Brown
         David T. Brown
         Jean Y. Liu
         KAUFMAN DOLOWICH
         & VOLUCK, LLP
         135 S. LaSalle St., Ste. 2100
         Chicago, IL 60603
         T: (312) 646-6744
         F: (312) 896-9403
         Email: dbrown@kdvlaw.com
         Email: jliu@kdvlaw.com

4831-8858-9657, v. 1